UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISAMARIE A. BRASSFIELD, | : | |
| Plaintiff | : | No. 4:11-CV-00847 |
| vs. | : | (Judge Nealon) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | : | FILED SCRANTON |
| Defendant | : | APR 2 2013 |

MEMORANDUM AND ORDER

PER M. b. /
DEPUTY CLERK

**BACKGROUND**

The above-captioned action was one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Lisamarie A. Brassfield's claim for social security disability insurance benefits and supplemental security income benefits. The case was remanded to the Commissioner for further proceedings. Pending before the court is a timely motion for reconsideration filed by the Commissioner.

On December 19, 2007, Brassfield protectively filed an application for disability insurance benefits and an application for supplemental security income benefits. After Brassfield was denied benefits by the Bureau of Disability Determination, she requested a hearing before an administrative law judge. That hearing was held on November 6, 2009, and the administrative law judge on January 4, 2010, issued a decision denying Brassfield's applications. The Appeals Council declined to grant review.

Brassfield then filed a complaint in this court on May

4, 2011. Supporting and opposing briefs were submitted and then on December 6, 2012, the Court issued a memorandum and order remanding the case to the Commissioner for further proceedings.

On December 19, 2012, the Commissioner filed a motion for reconsideration which has been briefed and is ripe for disposition. The basis for remanding the case was because the administrative law judge found that Brassfield had a moderate limitation in concentration, persistence and pace and did not include that limitation in the hypothetical question presented to the vocational expert. For the reasons set forth below, the Court will grant the motion for reconsideration and enter judgment in the Commissioner's favor.

**DISCUSSION**

A motion for reconsideration is a device of limited utility. It may be used only to seek remediation for manifest errors of law or fact or to present newly discovered evidence which, if discovered previously, might have affected the court's decision. Harsco Corp. v. Zlotnicki, 779 F.2d 906 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986); Massachusetts Mutual Life Insurance Co. v. Maitland, Civil No. 87-0827 (M.D. Pa. March 1, 1989) (Rambo, J.). Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the

motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café v. Quineros, 176 F.3d 669, 677 (3d Cir. 1999)(citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration may not be used as a means to reargue unsuccessful theories, or argue new facts or issues that were not presented to the court in the context of the matter previously decided. Drysdale v. Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus. Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995).

The Commissioner in his motion has met the standard for granting a motion for reconsideration.

Brassfield, who was born in the United States on November 5, 1982, graduated from high school in 2000 and can read, write, speak and understand the English language and perform basic mathematical functions. During her elementary and secondary schooling, Brassfield attended regular education classes. Her past relevant work experience was as a stock person at a pharmacy, described by a vocational expert as unskilled, light to medium work; an administrative assistant at an automobile dealership, described as semiskilled, sedentary work; and as a mailroom assistant for a newspaper, described as unskilled to semi-skilled, light work. Records of the Social Security Administration reveal

that Brassfield had reported earnings in the years 1999 through 2005. Brassfield's total earnings during those years were $35,154.91. Her annual earnings ranged from a low of $240.99 in 1999 to a high of $12,557.33 in 2004. Brassfield has not worked since April 1, 2005, the date she claims she became disabled because of posttraumatic stress disorder, bipolar disorder and anxiety disorder. Brassfield contended that her mental impairments prevented her from working around people and impacted her concentration, persistence and pace. Brassfield did not claim that she was disabled as the result of a physical impairment.

Although the record revealed that Brassfield had a "very troubling childhood" including being subjected to physical and sexual abuse, Brassfield only alleged disability commencing after age 22; she received treatment (medications) for her psychiatric problems from her primary care physicians, John Maylock, M.D., and Joseph Cama, M.D.; treatment notes of the primary care physicians do not reveal any mental status findings or complaints of psychological problems; during the relevant time period Brassfield cared for an infant son and spent time with her boyfriend; she was able to care for her personal needs, handle her finances, shop, prepare meals, and perform household chores; and Brassfield enjoyed reading, writing, watching television, listening to music, doing crossword puzzles and playing board games. Although one of Brassfield's primary care physicians, Dr. Maylock, opined in a conclusory fashion that she was permanently disabled, a state

agency psychologist, Frank M. Mrykalo, Ed.D., indicated that she had the mental ability to engage in competitive work on a sustained basis.

Dr. Maylock did not provide a detailed assessment of Brassfield's mental functional abilities. Dr. Cama also did not provide a functional assessment. In contrast there were two mental functional assessments provided by state agency psychologists, Dr. Mrykalo and Charles Tucker, Ph.D., who found that Brassfield only had mild difficulties in maintaining concentration, persistence or pace. Tr. 239 and 245.[1] However, as noted above the ALJ in his decision found that Brassfield had moderate difficulties. The Court concluded, based on <u>Ramirez v. Barnhart</u>, 373 F.3d 546, 552-553 (3d Cir. 2004), that because the ALJ found a moderate limitation and did not include that limitation in the hypothetical question asked of the vocational expert, that the ALJ's determination at step five of the sequential evaluation process was not supported by substantial evidence.

The Commissioner, in the motion for reconsideration, points out that the moderate limitation in Brassfield's concentration, persistence and pace was because of the isolation Brassfield "is relegated to as a result of her [mental] impairments," and the ALJ accommodated that situation by providing

---

1. References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of his Answer on August 4, 2011.

5

in the residual functional capacity assessment that Brassfield have no contact with the general public[2] and only occasional interaction with coworkers and supervisors. The ALJ, when he found a moderate limitation, was focusing on Brassfield's difficulty interacting with others. He concluded that Brassfield could not engage in work which involved having contact with the general public or more than occasional interaction with coworkers and supervisors. Brassfield's difficulty was addressed in the hypothetical question asked of the vocational expert. Specifically, the ALJ asked the vocational expert the following questions:

> Q. . . . I want you to assume that a person of the claimant's age, education and work experience. Has no exertional limitations but has non-exertional limitations in that they are limited to performing simple, repetitive tasks. No contact with the general public, only occasional contact with supervisors and coworkers and work involving only simple judgments and decision making. Would there be any work in this claimant's past available to such a person?
>
> A. No, not from her past history but there would be many jobs in the economy that she would be able to perform under the hypothetical.

---

2. It appears that the ALJ provided that Brassfield have no contact with the general public because a third state agency psychologist Lynnette G. Ruch, Ph.D., who actually examined Brassfield, concluded that Brassfield had marked limitations in her ability to interact appropriately with the public. Tr. 214. Dr. Ruch found that Brassfield had no limitations with respect to understanding, remembering and carrying out short, simple instructions; slight limitations with respect to understanding, remembering and carrying out detailed instructions and responding appropriately to changes in a routine work setting; and moderate limitations in her ability to make judgments on simple work-related decisions, interact appropriately with supervisors and coworkers, and respond appropriately to work pressures in usual work setting. Id.

6

Tr. 45-46. The present case is distinguishable from <u>Ramirez</u> because the ALJ in that case did not so define the boundaries of a moderate limitation in concentration, persistence and pace.

**AND NOW, this 2nd day of April, 2013, IT IS HEREBY ORDERED THAT:**

1. The Commissioner's motion for reconsideration (Doc. 27) is **GRANTED**.

2. The Clerk of Court shall enter judgment in favor of the Commissioner and against Lisamarie A. Brassfield as set forth in the following paragraph.

3. The decision of the Commissioner of Social Security denying Lisamarie A. Brassfield disability insurance benefits and supplemental security income benefits is **AFFIRMED**.

_____
**United States District Judge**